Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BERGMANN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

Plaintiff Larry Bergmann ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding GDS Holdings Limited ("GDS" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded GDS securities between April 12, 2021 and April 3, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged

1

misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## **PARTIES**

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased GDS securities during the Class Period and was economically damaged thereby.

7.     GDS purports to be "a leading developer and operator of high-performance data centers in China and South East Asia."

8.     The Company is incorporated in the Cayman Islands and its principal place of business is located at F4/F4, Building C, Sunland International No. 999 Zhouhai Road, Pudong, Shanghai 200137, People's Republic of China ("China"). GDS's American Depositary Shares ("ADS" or "ADSs") trade on the NASDAQ exchange under the ticker symbol "GDS".

9.     Defendant William Wei Huang ("Huang") is the Company's founder, Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board").

10.     Defendant Daniel Newman ("Newman") has served as the Company's Chief Financial Officer ("CFO") since 2011.

11.     Defendants Huang and Newman are collectively referred to herein as the "Individual Defendants."

12.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

2

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

13.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

14.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to GDS under *respondeat superior* and agency principles.

15.     Defendant GDS and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

1
2
3
4
5
6

16.     On April 12, 2021, the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2020 (the "2020 Annual Report"). Attached to the 2020 Annual Report were signed certifications pursuant SOX signed by Defendants Huang and Newman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

7
8

17.     The 2020 Annual Report contained the following statement about Defendant Huang's Company ownership:

9
10
11
12
13
14

***Our corporate actions are substantially controlled by our principal shareholders, including our founder, chairman and chief executive officer, Mr. Huang, who have the ability to control or exert significant influence over important corporate matters that require approval of shareholders, which may deprive you of an opportunity to receive a premium for your ADSs and/or ordinary shares and materially reduce the value of your investment.***

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Our amended articles of association provide that Class B ordinary shares are entitled to 20 votes per ordinary share at general meetings of our shareholders with respect to the election or removal of a simple majority of our directors. ***Mr. Huang beneficially owns 100% of the Class B ordinary shares issued and outstanding, and any additional Class A ordinary shares which Mr. Huang directly or indirectly acquires may be converted into Class B ordinary shares***. In addition, for so long as there are Class B ordinary shares outstanding, the Class B shareholders are entitled (i) to nominate one less than a simple majority, or five, of our directors, and (ii) to have 20 votes per ordinary share with respect to the election and removal of a simple majority, or six, of our directors. In addition, our amended articles of association provide that STT GDC (a wholly owned subsidiary of STT Communications Ltd., or STTC, which is in turn a wholly owned subsidiary of Singapore Technologies Telemedia Pte Ltd, or ST Telemedia), has the right to appoint up to three directors to our board of directors for so long as they beneficially own certain percentages of our issued share capital. Such appointments will not be subject to a vote by our shareholders. See "Item 6. Directors, Senior

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

Management and Employees—C. Board Practices—Appointment, Nomination and Terms of Directors."

Furthermore, as of March 31, 2021, two of our principal shareholders—*STT GDC and Mr. Huang, our founder, chairman and chief executive officer—beneficially owned approximately 34.5% of our outstanding Class A ordinary shares and 100% of our outstanding Class B ordinary shares, respectively*. On matters where Class A and Class B ordinary shares vote on a 1:1 basis, STT GDC exercises 32.2% of the aggregate voting power. *On matters where Class A and Class B ordinary shares vote on a 1:20 basis, Mr. Huang exercises 49.3% of the aggregate voting power*.

As a result of these appointment rights, nomination rights, dual-class ordinary share structure and ownership concentration, these shareholders have the ability to control or exert significant influence over important corporate matters, investors may be prevented from affecting important corporate matters involving our company that require approval of shareholders, including:

● the composition of our board of directors and, through it, any determinations with respect to our operations, business direction and policies, including the appointment and removal of officers;
● any determinations with respect to mergers or other business combinations;
● our disposition of substantially all of our assets; and
● any change in control.

(Emphasis added).

18.     This statement was materially false and misleading. By the time the 2020 Annual Report was filed with the SEC, in April 2021, Huang may have literally owned 34.5% of the outstanding Class A ordinary shares, and 100% of the Class B shares, but starting in May 2020 he had started engaging in pre-paid forward sale contract transactions which, as the Company later noted, could drive his beneficial ownership interest in the Company's total issued share capital below 5%.

5

19.     On April 28, 2022, and the Company filed with the SEC its Annual Report on Form 20-F for the year ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were signed certifications pursuant SOX signed by Defendants Huang and Newman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.     The 2021 Annual Report contained the following statement about Defendant Huang's equity ownership:

> ***Our corporate actions are substantially controlled by our principal shareholders, including our founder, chairman and chief executive officer, Mr. Huang, who have the ability to control or exert significant influence over important corporate matters that require approval of shareholders, which may deprive you of an opportunity to receive a premium for your ADSs and/or ordinary shares and materially reduce the value of your investment.***
>
> Our Articles of Association provide that Class B ordinary shares are entitled to 20 votes per ordinary share at general meetings of our shareholders with respect to the election or removal of a simple majority of our directors. Mr. Huang beneficially owns 100% of the Class B ordinary shares issued and outstanding, and any additional Class A ordinary shares which Mr. Huang directly or indirectly acquires may be converted into Class B ordinary shares. In addition, for so long as there are Class B ordinary shares outstanding, the Class B shareholders are entitled (i) to nominate five of our directors, and (ii) to have 20 votes per ordinary share with respect to the election and removal of a simple majority, or six, of our directors. In addition, our Articles of Association provide that STT GDC (a wholly owned subsidiary of STT Communications Ltd., or STTC, which is in turn a wholly owned subsidiary of Singapore Technologies Telemedia Pte Ltd, or ST Telemedia), has the right to appoint up to three directors to our board of directors for so long as they beneficially own certain percentages of our issued share capital. Such appointments will not be subject to a vote by our shareholders. See "Item 6. Directors,

6

Senior Management and Employees—C. Board Practices—Appointment, Nomination and Terms of Directors."

***Furthermore, as of April 15, 2022, two of our principal shareholders—STT GDC and Mr. Huang, our founder, chairman and chief executive officer—beneficially owned approximately 36.4% of our outstanding Class A ordinary shares and 100% of our outstanding Class B ordinary shares, respectively***. On matters where Class A and Class B ordinary shares vote on a 1:1 basis, STT GDC exercises 31.9% of the aggregate voting power. On matters where Class A and Class B ordinary shares vote on a 1:20 basis, Mr. Huang exercises 49.2% of the aggregate voting power. For more details, see "Item 6. Directors, Senior Management and Employees—E. Share Ownership."

As a result of these appointment rights, nomination rights, dual-class ordinary share structure and ownership concentration, these shareholders have the ability to control or exert significant influence over important corporate matters, investors may be prevented from affecting important corporate matters involving our company that require approval of shareholders, including:

● the composition of our board of directors and, through it, any determinations with respect to our operations, business direction and policies, including the appointment and removal of officers;

● any determinations with respect to mergers or other business combinations;

● our disposition of substantially all of our assets; and

● any change in control.

(Emphasis added).

21. This statement was materially false and misleading. By the time the 2021 Annual Report was filed with the SEC, in April 2022, Huang may have literally owned 36.4% of the outstanding Class A ordinary shares, and 100% of the Class B shares, but beginning in May 2020, he had begun engaging in pre-paid forward sale contract transactions which, as the Company noted, could drive his

1  beneficial ownership interest in the Company's total issued share capital below
2  5%.

3      22.    The statements contained in ¶¶ 16-17, 19-20 were materially false
4  and/or misleading because they misrepresented and failed to disclose the following
5  adverse facts pertaining to the Company's business, operations and prospects,
6  which were known to Defendants or recklessly disregarded by them. Specifically,
7  Defendants made false and/or misleading statements and/or failed to disclose that:
8  (1) Defendant Huang had engaged in undisclosed pre-paid forward sale contract
9  transactions as early as May 2020; (2) this presented a risk of Defendant Huang's
10 ownership going below 5% of the Company's outstanding shares; (3) if Huang's
11 ownership dipped below 5%, it would result in a change of control of the Company
12 which, as the Company admitted, could result in disastrous consequences; and (4)
13 as a result, Defendants' statements about its business, operations, and prospects,
14 were materially false and misleading and/or lacked a reasonable basis at all relevant
15 times.

16                      **THE TRUTH EMERGES**

17     23.    Then, on April 4, 2023, the Company filed with the SEC its Annual
18 Report on Form 20-F for the year ended December 31, 2022 (the "2022 Annual
19 Report"). Attached to the 2022 Annual Report were signed certifications pursuant
20 to SOX signed by Defendants Huang and Newman attesting to the accuracy of
21 financial reporting, the disclosure of any material changes to the Company's
22 internal controls over financial reporting, and the disclosure of all fraud.

23     24.    In the 2022 Annual Report, the Company admitted that Defendant
24 Huang had entered into undisclosed pre-paid forward sale contract transactions,
25 which the Company had previously omitted from its filings, and which could spell
26 disastrous consequences for the Company if Defendant Huang's share ownership
27 went below 5%. The 2022 Annual Report stated, in pertinent part:

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

*If Mr. Huang's beneficial ownership in our company falls below 5%, our dual-class share structure will terminate and a change of control would be triggered under certain of our material commercial and loan agreements, and our business development, financial condition and future prospects may be materially and adversely affected.*

Subject to the provisions of our Articles of Association, our Class B ordinary shares will automatically convert into Class A ordinary shares upon the occurrence of an automatic conversion event, which events include, among others, Mr. Huang having beneficial ownership in less than 5% of our issued share capital on an as converted basis. As of March 15, 2023, Mr. Huang beneficially owned (whether in the form of ordinary shares or ADSs) 84,047,840 ordinary shares, representing 5.39% of our total issued share capital.

*Mr. Huang has in the past entered into, and may in the future enter into, certain transactions from time to time, including derivative transactions, that have and could have the effect of reducing Mr. Huang's beneficial ownership in our company. Mr. Huang informed our company that certain variable pre-paid forward sale contract transactions in respect of 42,457,504 ordinary shares beneficially owned by him, which transactions he originally entered into between May 2020 and June 2022*, would expire between March 2023 and December 2023. *If Mr. Huang chooses to settle these transactions by transferring ownership of the 42,457,504 ordinary shares to the counterparties, his beneficial ownership interest in our total issued share capital may decrease to below 5%, which would trigger an automatic conversion event, unless the 5% threshold contained in our Articles of Association is reduced or he otherwise acquires beneficial ownership of additional shares to keep his beneficial ownership at or above 5% or such other threshold if so reduced*.

Should this happen, all Class B ordinary shares would automatically convert into Class A ordinary shares, and the dual-class share structure would thereby be terminated. *This would constitute a change of control for the purposes of certain of our, or our*

9

*subsidiaries' and the consolidated entities', sales agreements and domestic loan facility agreements, and if such provisions under the domestic loan agreements are triggered, which could give the lenders the right to demand early repayment under these domestic loan agreements. Such change of control may result in actual, potential or alleged breaches or early termination of other contracts or agreements. The change of control potentially may also have implications for the purposes of China's national security review regime and anti-monopoly merger filing requirements, if applicable.* The occurrence of any of the foregoing may have a material and adverse effect on our business development, financial condition and future prospects.

\* \* \*

Our board of directors continues to explore additional possible measures to maintain the stability of its corporate governance structure and dual-class shareholding structure in the best interests of the Company, with due consideration given to the possible negative ramifications of a potential automatic conversion event on the operations and prospects of our group.

(Emphasis added).

25.     On this news, the price of GDS ADSs declined by $0.74 per ADS, or 3.99%, to close at $17.80 on April 4, 2023. The next day it declined a further $0.56 per ADS, or 3.14%, to close at $17.24.

26.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired the Company's securities publicly traded on NASDAQ during the Class Period, and who were damaged thereby (the "Class").

Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

28.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

29.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

30.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

31.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

32.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

33.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

- as a public issuer, the Company filed periodic public reports;

- the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

34.    Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

35.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

36.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37.    This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

38.    During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

39.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

40.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

41.     Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them

or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

42.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

43.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

44.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

45.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

46.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

15

47.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

48.     As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

49.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 21, 2023

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS