# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

LARRY BERGMANN, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

GDS HOLDINGS LIMITED,

WILLIAM WEI HUANG, and DANIEL

NEWMAN,

Defendants.

Case No. 2:23-cv-04900-JAK-BFM

DECLARATION OF PAUL MULHOLLAND IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

Hon. John A. Kronstadt

CLASS ACTION

I, Paul Mulholland, declare as follows:

1. I am Certified Public Accountant (inactive) and President of Strategic Claims Services, Inc. ("Strategic Claims"), a nationally recognized class action administration firm. At the request of Lead Counsel, I am submitting this declaration to provide the Court and the Parties to the above-captioned action (the "Action")[1] with information about the notice and administration costs; proposed notice plan; and procedures to assist claimants who may not have access to trading records. I am over 21 years of age and not a party to this Action. The following statements are based on my personal knowledge and information provided by other Strategic Claims employees working under my supervision, and if called to do so, I could and would testify competently thereto.

2. Strategic Claims has successfully implemented notification and claims administration programs in over 600 class actions. Strategic Claims' staff consists of experienced accountants, information technology specialists, and various other professionals with substantial experience in notice and claims administration. In addition, members of our team have administered many of the most noteworthy securities class action settlements in recent years, including *In re Christine Asia Co. Ltd. et al. v. Jack Yun Ma* (Alibaba) et al. Securities Litigation, No. 1:15-md-02631-CM (SDA), (S.D.N.Y.); *In re Silver Wheaton Corp. Securities Litigation*, No. 2:15-cv-05146-CAS-PJWx, (C.D. of Cal.); and *In re Omega Healthcare Investors, Inc. Securities Litigation.*, No. 1:17-cv-08983-NRB. (S.D.N.Y.). Strategic Claims has also administered several additional securities class action settlements in the Ninth Circuit, including *Smith v. NetApp, Inc., et al.*, Case No. 4:19-cv-4801-JST (N.D. Cal.), *In re Spectrum Pharma, Inc. Secs. Litig.*, Case No. 2:16-cv-02279-RFB-EJY (D. Nev.), *Zhu, et al. v. Taronis Techs., Inc., et al.*, Case No. CV-19-04529-PHX-GMS (D. Az.), and *Brendon v. Allegiant Travel Co., et al.*, Case No. 2:18-cv-01758 (D. Nev.).

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation of Settlement, dated June 14, 2024 (the "Stipulation").

More information on SCS qualifications and experience can be found on our website at www.strategiccclaims.net. Attached hereto as Exhibit A is a SCS brochure; a summary of SCS experience and qualifications; my curriculum vitae; and a list of representative cases administered by SCS over the past three years. Strategic Claims was selected by Lead Counsel to serve as Claims Administrator for this Action, subject to the approval of the Court.

3.      The proposed notice plan in this matter uses procedures that have been designed to provide e-mail notification to potential Settlement Class Members who can be identified with reasonable effort.[2] In addition, direct mail notification will be provided to over 2,300 financial institutions, whether brokerage firms, banks, and other third-party nominees, that regularly monitor proposed securities class action settlements. All persons and entities identified as potential Settlement Class Members will be sent an e-mail link. The e-mail will direct the recipient to the settlement website, www.strategicclaims.net/GDS/ to find a complete Long Notice along with the Claim Form. The e-mail will also notify potential Settlement Class Members that they can request a copy of the Claim Form to be mailed. The Notice, Claim Form, and settlement website will include instructions for claim submission. The proposed notice plan also calls for publication of the Summary Notice to be transmitted two times in the *GlobeNewswire,* a national newswire, and once in the *Investors' Business Daily.* In addition, SCS will send the Depositor Trust Company ("DTC") the Notice for the DTC to publish on its Legal Notice System ("LENS").  LENS provides DTC participants with the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

4.      As in most class actions of this nature, the large majority of Settlement Class Members will be beneficial purchasers who hold their securities in "street name,"

---

[2] Contacting Settlement Class Members through e-mail notification will substantially reduce administration costs. Cost savings for printing and postage alone will be approximately $108,000.

i.e., the securities are purchased by banks, brokers, and other nominees ("Nominees")[3] in the name of the Nominee on behalf of the beneficial purchaser. Accordingly, to effectuate notice to the majority of the Class, Strategic Claims will use reasonable efforts to give notice to nominee purchasers such as brokerage firms and other persons and entities that purchased or acquired GDS ADS during the Class Period as record owners but not as beneficial owners. Within ten calendar days of receiving notice, those nominees will have the option of (a) providing the name, last known e-mail address of each such person or entity to Strategic Claims; or (b) request the link to the Notice and Claim Form from the Claims Administrator, and nominee, within ten calendar days of receipt, will email the link directly to all such persons or entities.

5.    SCS will promptly send an e-mail link directly to all potential Settlement Class Members identified by Nominees. SCS will also send an e-mail link directly to Nominees who indicate they will directly forward to their customers and clients who may be Class Members.  Each of these requests will be completed in a timely manner.

6.    Settlement Class Members will also be able to call a toll-free telephone number, (866) 274-4004, or email info@strategicclaims.net to speak with customer service representatives trained to answer questions about the Settlement. Both the toll-free telephone number and email address will be displayed, in multiple places, in the notices and Claim Form and on the Settlement Website. The Settlement Website will also provide an overview of the case and proposed Settlement and highlight important dates, including the date of the settlement hearing. All posted documents will be available for download from the Settlement Website.

### Estimated Administration Costs

7.    There were 970 million GDS ADS traded during the Class Period and approximately 48% of these outstanding ADS are owned by institutional holders. Based on Strategic Claims' experience and review of securities settlements of similar

---

[3] Currently, Strategic Claims' list of Nominees contains approximately 2,300 Nominees. This list is continually monitored and updated as Nominees change addresses, merge, go out of business, and/or come into existence.

size and complexity, Strategic Claims is estimating a Class size of approximately 250,000 Settlement Class Members.

8.    In SCS's experience, not all class members submit claims, and some of the claims submitted are not valid or eligible to receive a distribution under the plan of allocation. SCS estimates that in this case, 17.5%[4] of the estimated Settlement Class Members will file claims, or approximately 43,750 claims, and no more than an estimated 60% of these claims, or 26,250 claims, will be valid claims.

9.    Accordingly, Strategic Claims estimates that the total Notice and Administration Costs will be approximately $300,000 which is 10% of the proposed Settlement Amount. This estimate represents Strategic Claims fees of $227,000 and expenses of $73,000. In Strategic Claims' experience, the notice process and claims process as noted in paragraph 10 below, and the estimated fees and expenses outlined above are reasonable in relation to the value of the settlement, and consistent with those incurred in other securities settlements of similar size and complexity.

10.    SCS will provide administrative services as part of the Settlement administration process in the above-captioned litigation. In this matter, at a minimum, SCS will perform the following: (1) assist in preparing the Plan of Allocation; (2) assisting in preparing the long-form Notice and Summary Notice; (3) notify Nominees of the appropriate manner to provide the notice to potential Settlement Class Members who are beneficial holders; (4) set-up a Settlement Class database, phone system and frequently asked questions protocol; (5) set up a website to provide electronic claims filing, which will also host copies of the Complaint, Settlement documents, relevant Court orders and all other pertinent information for Settlement Class Members; (6) publish a Summary Notice two times in the *GlobeNewswire* and once in the *Investors' Business Daily*; (7) review and process all opt-out and objection requests; (8) process claims including handling cures and rejections; (9) update the Settlement Class database

---

[4] The typical claim filing ratio ranges from 10% to 25%. Strategic Claims is estimating a mid-point of 17.5% in this Action.

to include updated contact information and other updated information regarding Settlement Class Members; (10) handle and respond to all phone call questions from Class Members; (11) respond to all other questions via e-mails, letters and other correspondence from Settlement Class Members; (12) set up escrow accounts and handle all banking matters related to the administration process; (13) cut, mail and process distribution checks; (14) process all undeliverable check mailings and re-mail checks if forwarding addresses are provided for all distributions; (15)  undeliverable check mailings and re-mail if updated addresses are provided for all distributions; (16) re-issue checks for lost checks, changes in name, death of Settlement Class Members, or other valid changes requiring a new check subject to verification by SCS; (17) send out second notices for un-cashed checks for each of the distributions (18) perform monthly bank reconciliations and handling of all other post distribution matters; (19) provide accounting and periodic status reports; (20) prepare declarations as required by the Court throughout the administrative process; (21) obtain an employer identification number and prepare and file federal and state income tax returns; (22) provide status reports to counsel; and (23) monitor and track all un-cashed checks.

11.     The foregoing amounts are estimates and the ultimate cost of this administration could change if the number of notices emailed is substantially greater (or smaller) than Strategic Claims' estimate or if the number of claims received is substantially greater (or smaller) than the estimate. In addition, the costs of this administration could also be impacted by any out-of-scope work encountered during the administration process. Strategic Claims will always strive to keep costs down whenever possible.

**Procedures to Assist Claimants Who May Not Have Access to Trading Records**

12.     As noted in paragraph 3 above, Strategic Claims will be requesting Nominees to provide e-mail addresses for beneficial holders.  Nominees typically will not provide any trading data for beneficial holders. Brokers who purchased ADS on behalf of beneficial holders are required to retain trading data for at least six years.  In

this Action, the Class Period is within this six-year period and therefore, Settlement Class Members should be able obtain trading records from their brokers.

13.    If Settlement Class Members are unable to provide trading records, Strategic Claims will not reject their claims.  Strategic Claims will first attempt to cure these claims by requesting these claimants to provide a letter from their brokers.  If a claimant is unable to provide a broker letter, Strategic Claims will typically request tax records such as 1099 form(s) or other tax records to verify trading data during the Class Period.  Strategic Claims will always try to work with claimants before rejecting their claims for no proof or inadequate proof.  Even if Strategic Claims rejects a claim with no proof or inadequate proof, the claimant will have an opportunity to respond to the rejection notice and contact Strategic Claims to cure their claims.   In this Action and based on Strategic Claims experience, Settlement Class Members should be able to obtain adequate proof from their brokers.

14.    Like all securities class action settlements, once the settlement has been finally approved and all claims administration is complete, Plaintiffs' counsel will make a motion with the Court for distribution of settlement proceeds based on Strategic Claims' claims processing.  At that time, the Court will be presented with, among other things, a full record of all the determinations of the Strategic Claims and the requested payment amounts for each claimant.

**This is a Non-Reversionary Settlement**

15.    This is a non-reversionary settlement.  Therefore, the gross settlement amount, $3 million, does not change based on the number of claims submitted or the number of opt-outs. Likewise, if the Court awards less attorneys' fees, expenses and/or incentive awards than requested by Plaintiffs and their counsel, those unawarded amounts will be distributed to claimants and do not revert back to Defendants.

16.    Over the years there has been a high level of attempts by individuals and institutions to submit fraudulent claims by submitting inadequate proof.   Strategic Claims has over twenty-five (25) years of experience in administering hundreds of

securities class action settlements and will continue to work with claimants to assist them to provide valid proof.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of September 2024

_____
Paul Mulholland

# EXHIBIT A

## CLAIMANT COMMUNICATION

*Phone Calls*
We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*
If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*
On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites Class Counsel can quickly and easily communicate to the class with ongoing updates and status changes in the Settlement.

## DISTRIBUTION

*Checks*
We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*
SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met.

## KEY INDIVIDUALS

Paul Mulholland, CPA, CVA
President
*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

Matthew Shillady
Operations Manager
*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

Josephine Bravata
Quality Assurance Manager
*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann University. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work."
Mike Karnuth, Esq.
Krislov & Associates, Ltd.

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

PHONE
866.274.4004
610.891.9852

FAX
610.565.7985

EMAIL
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."
Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

Copyright © 2009 Strategic Claims Services

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

*» We supply customized reports and detailed reviews of the Administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

*» We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

*» We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution. SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's requirements. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

*Our Services Include:*
*» Direct Mailed Notice*

*» Email Campaigns*

*» Notice Design and Proofing*

*» Claim Form Design*

*» Custom Websites for each settlement*

*» Customize Class Data*

*» Updating Out-of-Date Class Data*
*(National Change of Address, Skip-tracing methods)*

*» Providing compliance affadavits/declarations for publications and direct mailing*

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs, we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
*» Convert most data formats for use in the class database*

*» Database Management and Design*

*» Website Design and Updates*

*» Design custom reports for clients based on class data*

*» Removal of duplicate records*

*» Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

» Determining the validity of each claim filed

» Calculation of losses for each claim

» Communication with claimants to cure invalid claims

» Quality assurance for all high value claims

» Final reporting to Counsel and the Court

» Electronic Claim Processing

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.

# SUMMARY

## SCS Experience and Qualifications

SCS has been in business since 1999. SCS has administered over 600 class action cases over the last 20 years including over 400 security cases including several settlements with the SEC. SCS has handled over $3 billion in settlement funds. SCS is considered one of the leading notice and claims administrator in the United States and has never had a claim filed against us in any manner. Please visit our website at www.strategicclaims.net.

## Quality Assurance

SCS has never had a claim filed against it. This is the result of our strong quality control procedures. For example, our database will insert the high and low trading prices and reported trading volume (adjusted for market maker trading or specialist trading) for each day in the class period and verify the information in the claims are within these parameters. Additional quality assurance steps include but are not limited to review of any unusual trading on claims; large claims using a P.O. Box as an address; large transactions by non-institutions claimants; review of suspicious documentation by claimants; follow-up phone calls to brokers to authenticate non-institutional purchasers; as well as various random sampling of claims for additional quality assurance review. SCS operates similar to large public accounting firm where a staff member, supervisor, manager and an executive all are involved in reviewing claims. Our quality control department will then perform statistical sampling and other procedures in reviewing claims before signing off. Besides setting up the database to detect inconsistencies, our fraud prevention procedures consists of several steps including a sampling of claims to verify the supporting documentation is authentic (i.e. contact brokers); performing a sampling of skip tracing to make sure that social security numbers and names are a proper match as well as other procedures. In addition to our list of fraudulent claimants from other cases, we communicate with the FBI for any updated list of fraudulent claimants from previous cases.

SCS has a variety of security measures in place to ensure all personal information is kept safe and secure. These measures include, but are not limited to, SSL encryption of all data submitted through our website; internal monitoring of all computer usage by employees; live antivirus scanning of all files received/sent along with weekly updates and scanning of all servers and computers on our network; password protected and restricted access for employees working with personal data; use of a monitored and secure VPN for remote access; daily, weekly and monthly backups to secure offsite storage; and 24/7 notifications to immediately address any irregularities.

## PAUL MULHOLLAND, CPA
### (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in the administration of class action cases and in providing damages analyses in class action matters. SCS has administered over 500 class action settlements and calculated over 150 damage analyses since its inception. The Company also specializes in the preparation and compliance of federal and state income taxes for Qualified Settlement Funds. For more information on SCS visit its website at **www.strategicclaims.net**.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Valley Forge Administrative Services, Inc. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters and for claims processing and administration of class action settlements. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a member of the AICPA. He serves on several advisory boards and board of directors for several companies in the Philadelphia area. Mr. Mulholland was an adjunct professor of accounting and finance at Neumann University located in Aston, PA.

PAUL MULHOLLAND, CPA
EXPERT TESTIMONY AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                          June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                   June 2004

Barter v. Southmoore Golf Associates                       March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)      March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)  March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York                 June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                               May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No.  03-4439                                   June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                               February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)  January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips        March 2019

**Provide a list of Class Action cases handled over the few years (Last Three Years)**

Case 2:23-cv-04900-JAK-BFM   Document 73-1   Filed 09/05/24   Page 16 of 17   Page ID #:1043

| Case Named | Number of Claims | Number of Notices | Settlement Value |
|---|---|---|---|
| Christine Asia Co. Ltd. et al. v. Jack Yun Ma et al. | 166,891 | 1,086,191 | $250,000,000.00 |
| In re Silver Wheaton Corp. Securities Litigation | 100,245 | 484,155 | $41,500,000.00 |
| Menaldi v. Och-Ziff Capital Management Group LLC, et al. | 30,567 | 68,723 | $28,750,000.00 |
| Richard Thorpe and Darrel Weisheit v. Walter Investment Management Corp., et al.Corp., et al | 54,712 | 39,777 | $24,000,000.00 |
| Thomas, et al. v. MagnaChip Semiconductor Corp., et al. | 14,419 | 40,078 | $23,500,000.00 |
| In re Prothena Corporation plc Sec. Litig. | 5,989 | 28,970 | $15,750,000.00 |
| In re USA Technologies, Inc. Securities Litigation | 6,089 | 32,766 | $15,300,000.00 |
| In re United Development Funding IV Securities Litigation / Hay v. United Development Funding IV, et al | 11,717 | 49,535 | $10,435,725.00 |
| Lee v. Pincus | 1,745 | 1,865 | $10,000,000.00 |
| Meyer v. Concordia International Corp. | 3,071 | 11,159 | $9,250,000.00 |
| Orthofix Fair Fund | 8,362 | 19,208 | $8,250,000.00 |
| Mauss v. NuVasive, Inc | 44,628 | 90,632 | $7,900,000.00 |
| In re Montage Technology Group Limited Securities Litigation | 15,950 | 12,141 | $7,250,000.00 |
| In re Montage Technology Group Limited Securities Litigation | 15,950 | 12,141 | $7,250,000.00 |
| In re Patriot National, Inc. Securities Litigation | 2,589 | 13,530 | $6,500,000.00 |
| Thomas, et al. v. MagnaChip Semiconductor Corp., et al. | 21,468 | 45,537 | $6,200,000.00 |
| Bristol County Ret. Sys. v. Qurate Retail, Inc. | 20,932 | 89,676 | $5,750,000.00 |
| Delarosa v. State Street Corporation, et al. | 245,112 | 469,215 | $4,900,000.00 |
| Carlton, et al., v. Cannon, et al. | 7,118 | 22,786 | $4,500,000.00 |
| In re Lipocine Inc. Securities Litigation | 2,967 | 10,376 | $4,250,000.00 |
| In re: iDreamSky Technology Limited Securities Litigation | 15,778 | 12,822 | $4,150,000.00 |
| Snellink v. Universal Travel Group, Inc. | 3,416 | 32,351 | $4,075,000.00 |
| De Vito v. Liquid Holdings Group, Inc., et al | 4,953 | 15,004 | $4,062,500.00 |
| Brendon v. Allegiant Travel Company, et al. | 16,813 | 49,085 | $4,000,000.00 |
| United Food and Commercial Workers Pension Fund v. Advanced Emissions Solutions, Inc., et al., | 22,716 | 10,367 | $3,950,000.00 |
| Costas v. Ormat Technologies, Inc. | 5,665 | 32,542 | $3,750,000.00 |
| Too v. Rockwell Medical Inc., et al. | 1,188 | 10,143 | $3,700,000.00 |
| In re IsoRay, Inc. Securities Litigation | 796 | 12,286 | $3,537,500.00 |
| Harr v. Ampio Pharmaceuticals, Inc., et al. | 9,938 | 13,400 | $3,400,000.00 |
| Fred Kelsey v. Patrick J. Allin, et al. | 11,800 | 16,376 | $3,300,000.00 |
| Yedlowski v. Roka Bioscience, Inc. | 3,537 | 2,631 | $3,275,000.00 |
| Nickolas Van Wingerden v. Cadiz Inc., et al | 5,970 | 4,886 | $3,000,000.00 |
| Pritchard v. Apyx Medical Corporation, et al. | 459 | 4,983 | $3,000,000.00 |
| In re Retrophin, Inc. Securities Litigation | 6,122 | 8,807 | $3,000,000.00 |
| Wang v. China Finance Online Co. Limited | 20,645 | 31,744 | $3,000,000.00 |
| In re Spectrum Pharmaceuticals, Inc. Securities Litigation | 15,845 | 56,912 | $2,995,000.00 |
| Gauquie v. Albany Molecular Research, Inc. et al. | 7,551 | 4,141 | $2,868,000.00 |
| In re Lihua International, Inc. Securities Litigation | 1,688 | 6,785 | $2,865,000.00 |
| Vaccaro, et al. v. New Source Energy Partners L.P., et al. | 719 | 2,283 | $2,850,000.00 |
| In re Namaste Technologies Inc. Securities Litigation | 2,965 | 64,992 | $2,750,000.00 |
| In re Akari Therapeutics, plc Securities Litigation | 284 | 3,460 | $2,700,000.00 |
| Moleski v. Tangoe, Inc., et al. | 16,580 | 26,366 | $2,550,000.00 |
| In re Sunrun Inc. Securities Litigation | 5,200 | 35,908 | $2,500,000.00 |

| Case | | | Amount |
|---|---|---|---|
| Hosey v. Costolo | 463,059 | 183,031 | $2,500,000.00 |
| Donald Chu v. BioAmber Inc., et al. | 13,545 | 2,612 | $2,250,000.00 |
| In re Akers Biosciences, Inc. Securities Litigation | 115,995 | 2,041 | $2,250,000.00 |
| Tapia-Matos v. Caesarstone, Ltd. et al. | 35,126 | 53,284 | $2,200,000.00 |
| Rand-Heart of New York, Inc., et al v. James P. Dolan | 3,447 | 609 | $2,100,000.00 |
| In re DS Healthcare Group, Inc. Securities Litigation | 8,628 | 587 | $2,100,000.00 |
| Church v. Chatila, et al. | 14,880 | 2,136 | $2,100,000.00 |
| Matthew Crandall v. PTC Inc., et al | 69,978 | 40,181 | $2,100,000.00 |
| Dartell, v. Tibet Pharmaceuticals, Inc. | 4,941 | 1,456 | $2,075,000.00 |
| Cohen v. Kitov Pharmaceuticals Holdings, Ltd., et al. | 11,666 | 885 | $2,000,000.00 |
| Crystal v. Medbox, Inc., et al. | 40,390 | 2,865 | $1,850,000.00 |
| Petrie v. Electronic Game Card, Inc., et al. / Pace v. Quintanilla, et al | 14,233 | 763 | $1,755,000.00 |
| Ford v. Natural Health Trends Corp. et al. | 23,267 | 2,507 | $1,750,000.00 |
| Calfo, et al., v. Messina, Sr., et al. | 10,201 | 2,617 | $1,650,000.00 |
| Shapiro v. Alliance MMA, Inc., et al. | 1,953 | 274 | $1,550,000.00 |
| In re CBD Energy Limited Securities Litigation | 5,183 | 4,182 | $1,500,000.00 |
| In re Altair Nanotechnologies Securities Litigation | 7,003 | 963 | $1,500,000.00 |
| Hrasok v. Kraton Corp., et al | 7,313 | 3,269 | $1,500,000.00 |
| Weinstein v. RMG Networks Holding Corp., et. al. | 11,219 | 358 | $1,500,000.00 |
| In re China Mobile Games & Entertainment Group, Ltd Securities Litigation | 14,592 | 15,933 | $1,500,000.00 |
| In re KaloBios Pharmaceuticals, Inc. Securities Litigation | 18,507 | 659 | $1,500,000.00 |
| In re KaloBios Pharmaceuticals, Inc. Securities Litigation | 21,491 | 898 | $1,500,000.00 |
| Nisselson v. Ji / Skeway, et al. v. China Natural Gas, Inc | 25,417 | 2,406 | $1,400,000.00 |
| Balon v. Agria Corporation, et al. | 730 | 125 | $1,300,000.00 |
| Springer, v. Code Rebel Corporation, et al. | 5,207 | 548 | $1,300,000.00 |
| Pepe v. Cocrystal Pharma, Inc. | 20,340 | 573 | $1,265,000.00 |
| Tran v. ERBA Diagnostics, Inc., et al. | 5,709 | 353 | $1,215,000.00 |
| Rex & Roberta Ling Living Trust v. B Communications Ltd., | 1,620 | 319 | $1,200,000.00 |
| Bai v. TCP International Holdings, Ltd., et al. | 1,661 | 433 | $1,100,000.00 |
| M & M Hart Living Trust et al. v. Global Eagle Entertainment et al. | 7,703 | 1,711 | $1,100,000.00 |
| Monachelli v. Hortonworks, Inc. | 8,285 | 1,765 | $1,100,000.00 |
| Garcia v. Hetong Guo, et al. | 2,982 | 298 | $1,000,000.00 |
| Guangyi Xu v. ChinaCache International Holdings Ltd., Song Wang, Jing An, and Ken Vincent Qingshi Zhang | 2,857 | 1,633 | $990,000.00 |
| Kachun Wong v. Baker Tilly Hong Kong, Ltd | 19,833 | 2,665 | $925,000.00 |
| In re NetSol Securities Litigation | 1,868 | 419 | $850,000.00 |
| Allen v. PixarBio Corporation, et al. | 428 | 92 | $750,000.00 |
| In re Velti plc Securities Litigation | 58,622 | 12,614 | $750,000.00 |
| Guyer v. MGT Capital Investments, Inc., et al. | 116,445 | 2,357 | $750,000.00 |
| In re Stemline Therapeutics, Inc. Securities Litigation | 2,180 | 555 | $680,000.00 |
| Castillo Iv v. 6D Global Technologies, Inc., et al. | 3,170 | 416 | $640,000.00 |
| Hull v. Global Digital Solutions, Inc. | 6,555 | 162 | $595,000.00 |
| Scalfani v. Misonix, Inc., et al. | 825 | 272 | $500,000.00 |
| Healy v. Arben Kryeziu a/k/a Arben Kane, et al. / Torres v. Arben Kryeziu a/k/a Arben Kane | 6,062 | 684 | $415,000.00 |
| In re ForceField Energy Inc. Securities Litigation | 4,028 | 1,254 | $414,500.00 |
| Longwei Petroleum Investment Holding Ltd. Dissolution Distribution | 3,843 | 786 | $100,000.00 |