Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*additional counsel on signature page*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BERGMANN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN, <br><br> Defendants. | Case No. 2:23-cv-4900-JAK (BFMx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO PLAINTIFFS** <br><br> <u>CLASS ACTION</u> <br><br> Date: February 10, 2025 <br> Time: 8:30 a.m. <br> Courtroom: 10C <br> Judge: Hon. John A. Kronstadt |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  CASE BACKGROUND .......................................................................................3

III. THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND ........................................................................................3

    A.  Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class ..................................................................3

    B.  The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ...............................................................................................4

    C.  The Requested Attorneys' Fees are Reasonable and Merited ........................5

        1.  Plaintiffs' Counsel Secured a Substantial Recovery for the Settlement Class ...........................................................................................5

        2.  The Risks and Complexity of the Litigation Support the Requested Fee Amount ................................................................................................7

        3.  Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ................................................................................................9

        4.  Plaintiffs' Counsel Undertook a Significant Financial Risk ...................10

        5.  Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund ........................................................................11

        6.  An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award .........................................................................13

        7.  The Settlement Class's Reaction Supports the Requested Fee ...............16

IV.  PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED .............................17

V.   THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS .............19

i

VI. CONCLUSION ...................................................................................................20

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...............................................................................7

*Atlas v. Accredited Home Lenders Holding Co.*,
2009 WL 3698393 (S.D. Cal. Nov. 4, 2009)..........................................................5

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) .........................................................................12

*Blum v. Stenson*,
465 U.S. 886 (1984)........................................................................................4, 13

*Boyd v. Bank of Am. Corp.*,
2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ......................................................12

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016).....................................................20

*Buccellato v. AT & T Operations, Inc.*,
2011 WL 3348055 (N.D. Cal. June 30, 2011)......................................................16

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010)..................................................................17

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................11

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................8

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014).........................................................................20

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ....................................................................................2

*Feller v. Transamerica Life Ins. Co.*,
  2019 WL 6605886 (C.D. Cal. Feb. 6, 2019) .........................................................16

*Fleming v. Impax Lab'ys Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) .......................................................15

*Fox v. Vice*,
  563 U.S. 826 (2011)................................................................................................14

*Glass v. UBS Fin. Servs., Inc.*,
  331 F. App'x 452 (9th Cir. 2009)..............................................................................5

*Gustafson v. Valley Ins. Co.*,
  2004 WL 2260605 (D. Or. Oct. 6, 2004) ..............................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  No. 13-317 .................................................................................................................3

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ......................................................................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................................................5

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
  2022 WL 826903 (C.D. Cal. Mar. 14, 2022)..........................................................15

*Hopkins v. Stryker Sales Corp.*,
  2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................................................16

*In re Activision Sec. Litig.*,
  723 F. Supp. 1373 (N.D. Cal. 1989).........................................................................4

*In re Am. Apparel, Inc. S'holder Litig..*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014)............................................9, 11, 13

*In re Apollo Grp. Inc. Sec. Litig.*,
   2012 WL 1378677 n2 (D. Ariz. Apr. 20, 2012) .......................................................14

*In re Audioeye, Inc., Sec. Litig.*,
   2017 WL 5514690 (D. Ariz. May 8, 2017) ............................................................12

*In re BP p.l.c. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012)....................................................................8

*In re Brooktree Sec. Litig.*,
   915 F. Supp. 193 (S.D. Cal. 1996)..........................................................................4

*In re FAT Brands, Inc. Sec. Litig.*,
   Case No. 2:22-cv-1820-MCS-RAO (C.D. Cal.)......................................................15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................7

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) .....................................................................14

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .............................................................................6

*In re Heritage Bond Litig.*,
   2005 WL 1594389 (C.D. Cal. June 10, 2005).....................................................7, 10

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005).................................................passim

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) .................................................................................6

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................17, 18

*In re IsoRay, Inc. Sec. Litig.*,
   2017 WL 11461073 (E.D. Wash. Mar. 7, 2017) ...................................................12

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ........................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ..................................................................................... 12

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ............................................................. 12

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. passim

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................. 7, 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................. 6

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ........................................................................................ 5

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................... 17

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................... 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .......................................................... 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ............................................................................. passim

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................................ 6

*Jenson, v. First Tr. Corp.*,
2008 WL 11338161 (C.D. Cal. June 9, 2008) ..................................................... 19, 20

*Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...........................................................9

*Johnson v. US Auto Parts Network, Inc.*,
  2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ..........................................................7

*Katz v. China Century Dragon Media, Inc.*,
  2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ..................................................13, 18

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................................9

*Lopez v. Youngblood*,
  2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ..........................................................4

*Luna v. Marvell Tech. Grp.*,
  2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)........................................................18

*Mauss v. NuVasive, Inc.*,
  2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ..........................................................12

*McPhail v. First Command Fin. Plan., Inc.*,
  2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ............................................................6

*Millan v. Cascade Water Servs., Inc.*,
  2016 WL 3077710 (E.D. Cal. May 31, 2016) ........................................................12

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003)............................................................................12

*Oh v. Hanmi Fin. Corp.*,
  Case No. 2:20-cv-2844-FLA-JCx (C.D. Cal.)........................................................15

*Ontiveros v. Zamora*,
  303 F.R.D. 356 (E.D. Cal. 2014) ..........................................................................17

*Pace v. Quintanilla*,
  2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .........................................................9

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

*Parkinson v. Hyundai Motor Am.*,
  796 F. Supp. 2d 1160 (C.D. Cal. 2010) ....................................................................14

*Patel v. Axesstel, Inc.*,
  2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ..........................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ....................................................................................3

*Rausch v. Hartford Fin. Servs. Grp.*,
  2007 WL 671334 (D. Or. Feb. 26, 2007) ................................................................13

*Razilov v. Nationwide Mut. Ins. Co.*,
  2006 WL 3312024 (D. Or. Nov. 13, 2006) ........................................................13, 20

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013)............................................................7

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ...............................................................................10

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................19

*Romero v. Producers Dairy Foods, Inc.*,
  2007 WL 3492841 (E.D. Cal. Nov. 14, 2007)..........................................................11

*Sawant v. Ramsey*,
  2012 WL 3265020 (D. Conn. Aug. 9, 2012)............................................................10

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ...........................................................12

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ...................................................................16

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007)..............................................................................16

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

*Szymborski v. Ormat Techs., Inc.*,
    2012 WL 4960098 (D. Nev. Oct. 16, 2012) ............................................................ 12

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..................................................................................................... 3

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ...................................................................................... 5

*Vandervort v. Balboa Cap. Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ...................................................................... 12

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ...................................................................................... 3

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 9

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................... 4, 5, 7, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .......................................................................................... 4

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............................................................ 8

## Statutes

15 U.S.C. § 78u-4(a)(4) ............................................................................................... 19

15 U.S.C. § 78u-4(a)(6) ................................................................................................. 5

## Other Authorities

H.R. Conf. Rep. No. 369 ............................................................................................. 19

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

Lead Plaintiff KNA Family, LLC ("KNA") and named Plaintiff Larry Bergmann (together, "Plaintiffs") submit this memorandum in support of their motion for an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs.[1]

## I.      INTRODUCTION

The Parties reached a Settlement to resolve this Action for $3,000,000 in cash ("Settlement"). The Settlement recovers approximately 6.1% of the maximum estimated damages of $48.9 million under Plaintiffs' best-case scenario at an early stage of the case, despite facing significant risks including the pending motion to dismiss filed by Defendant GDS Holdings Limited ("GDS"), difficulty in proving damages, and the availability of proof with defendants based in China. Having achieved this recovery for the Settlement Class, Lead Counsel seek an award of attorneys' fees of 25% of the Settlement Amount, or $750,000, reimbursement of expenses incurred of $40,957.14, and awards to Plaintiffs of $3,400 total ($2,000 for KNA and $1,400 for Bergmann), to be paid from the Settlement Fund. These requests include the fees and expense reimbursement sought by Plaintiffs' additional counsel, who are not seeking a separate award.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on June 14, 2024 ("Stipulation") (Dkt. No. 60). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Rosen Decl." are to the Declaration of Laurence M. Rosen, filed herewith. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata, attached as Exhibit 1 to the Rosen Decl. Citations to "Rosen Fee Decl." are to the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses, attached as Exhibit 3 to the Rosen Decl. Citations to "GPM Fee Decl." are to the Declaration of Ex Kano Sams ("GPM Fee Decl."), attached as Exhibit 4 to the Rosen Decl. Citations to "Final Approval Brief" are to the Memorandum of Points and Authorities in support of Plaintiffs' motion for final approval of the Settlement, filed herewith.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the reaction of the settlement class. Courts also cross-check the award against the time and effort counsel expended. Here, each of these factors weighs in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Parties reached the Settlement after informed, arm's-length negotiations with the aid of mediator Jed Melnick, Esq. of JAMS. This Settlement is a favorable result for Settlement Class Members in light of several obstacles Plaintiffs faced, including GDS's pending motion to dismiss, the availability of evidence from defendants based in China, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and the danger that Plaintiffs would not be able to obtain a larger sum if litigation were to continue given the difficulties of enforcing judgments in China.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks entailed in this litigation, Lead Counsel was able to secure a favorable recovery for the Settlement Class at an early stage of the litigation.

The Settlement Class approves of Lead Counsel's work. Objections are not due until January 6, 2025, but to date no Settlement Class Member has objected to the Settlement or the fee request, as previewed in the notice sent to potential Settlement Class Members (which noted that Lead Counsel would request fees of up to 30% of the Settlement Amount, higher than Lead Counsel's actual request here). There have been no requests for exclusion from Settlement Class Members.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $40,957.14. These expenses, including court filings fees, expert fees, investigator fees, mediation

fees, travel expenses, and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiffs seek awards of $3,400 total ($2,000 for KNA and $1,400 for Bergmann), for their time spent in carrying out their obligations in the Action. This request is reasonable in light of the time Plaintiffs spent in connection with this Action on behalf of the Settlement Class and is in line with awards granted in similar actions.

## II.   CASE BACKGROUND

A summary of Plaintiffs' allegations, the procedural history of this Action, and the events leading to the Settlement are set forth in the Final Approval Brief, § II.

## III.   THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND

### A.   Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). "The amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United

States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and an award is necessary and appropriate here for the same reasons.

### B. The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund

Under the "common fund doctrine" a reasonable fee is based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Courts in the Ninth Circuit have discretion to award fees in common fund cases based on either the percentage-of-the-fund method or the "lodestar/multiplier" method. *WPPSS*, 19 F.3d at 1295-96. "Despite this discretion, use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Among other benefits, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). The percentage method also preserves judicial resources by sidestepping time-consuming lodestar analysis while saving the Settlement Class from the delays necessitated by the Court's review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011) ("the lodestar method is difficult to apply [and] time consuming to administer.").

Finally, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage***

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

For these reasons the Court should award attorneys' fees based on the percentage-of-recovery method. The Court should use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 (using lodestar as "a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

### C.     The Requested Attorneys' Fees are Reasonable and Merited

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino*, 290 F.3d at 1047; *Omnivision*, 559 F. Supp. 2d at 1046. Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009). Here, each of these factors supports awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

#### 1.     Plaintiffs' Counsel Secured a Substantial Recovery for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (finding the "most critical factor is the degree of success obtained");

5

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

The $3 million Settlement constitutes approximately 6.1% of Plaintiffs' maximum estimated class-wide damages of $48.9 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This best-case scenario assumes that: (i) Plaintiffs succeed on a motion to dismiss, at summary judgment, and at trial; (ii) the Court certifies the same class period as the Settlement Class Period; and (iii) the Court and jury accept Plaintiffs' damages theory, including proof of loss causation for the full two-day alleged decline in stock price. The Settlement is a favorable result for Settlement Class Members, particularly in light of the considerable risks of litigation presented here. The Settlement falls well within the percentage of investor losses recovered in typical securities class action settlements. *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering about 3.5% of maximum damages and noting that the amount is within the median recovery in securities class actions settled in the prior few years); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (approving settlement recovering 7% of estimated damages); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162–63 (S.D.N.Y. 2011) ("the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses").

According to Cornerstone Research, between 2014-2022 the median recovery in cases such as this one alleging Rule 10b-5 claims with $25-74 million in maximum estimated damages was approximately 8.3% of maximum estimated damages. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements: 2023 Review and Analysis*

(Cornerstone Research), at 6.[2] Between 2019-2023, securities class actions that settled after the filing of a motion to dismiss but before a ruling recovered a median of 3.6% of estimated damages. *Id*. at 15. The recovery here compares favorably to recoveries in similar securities class action settlements, supporting the requested fee.

### 2.    The Risks and Complexity of the Litigation Support the Requested Fee Amount

The risks and complexity of the litigation are important factors in determining a fee award. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"); *WPPSS*, 19 F.3d at 1299-1301. Securities class actions are often complex, difficult to prove, and risky. *In re Heritage Bond Litig.*, 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action."). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Plaintiffs faced significant legal and practical risks if litigation were to continue. Plaintiffs' claims were subject to the PSLRA's stringent pleading standards. As a court observed in dismissing securities claims brought against BP following the Deepwater

---

[2] *Available* at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2023-Review-and-Analysis.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

Horizon disaster, "federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). "Legal precedents are continually making it more difficult to plead securities class actions," so courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016).

In its pending motion to dismiss, GDS asserted challenges to falsity, materiality, and scienter. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). GDS argued that Huang's transactions were publicly disclosed and therefore Defendants' statements were not materially false or misleading at the time they were made. GDS also argued that Plaintiffs' scienter allegations were insufficiently particularized and that the inference of scienter was less compelling than the non-fraudulent inference supported by the prior disclosure of Huang's transactions. Under the PSLRA, the element of scienter is particularly difficult to prove. *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009). Plaintiffs also faced significant risks of continued litigation beyond the pleading stage, such as obtaining class certification, conducting lengthy and expensive fact and expert discovery, surviving Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals. *See* Final Approval Brief, § IV(A).

Moreover, the Settlement is a favorable result because the Defendants are located in China, presenting unique challenges both in discovery and in attempting to collect on a potential judgment if Plaintiffs ultimately prevailed. *See* Final Approval Brief, §§IV(A)(3) (detailing difficulties and expense of conducting discovery in China) and IV(B) (describing risks of Chinese defendants abandoning the litigation and leaving investors with no recourse); Rosen Decl. ¶¶34-37. Accordingly, given the practical obstacles presented here, there was a substantial risk that Plaintiffs and the

8

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

Settlement Class would not be able to obtain a recovery of this size, or at all, had they continued to litigate.

### 3.    Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support the requested fee award. "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*10 (C.D. Cal. Oct. 10, 2019); *In re Am. Apparel, Inc. S'holder Litig..*, 2014 WL 10212865, at \*22 (C.D. Cal. July 28, 2014) (similar).

The Court-appointed Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), have amassed the skills and experience needed to prosecute this case through their considerable experience litigating and settling similar actions. Rosen Decl. ¶47; Rosen Fee Decl., Exhibit E (Rosen Law firm resume). They have shown they are willing and able to litigate a case to resolution. *See, e.g., Pace v. Quintanilla*, 2014 WL 4180766, at \*3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement). Rosen Law applied the same skill, experience, and determination in litigating this Action to a favorable resolution for the Settlement Class. Glancy Prongay & Murray LLP ("GPM"), additional counsel for

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

Plaintiffs, also have substantial experience prosecuting securities class actions on behalf of investors. *See* GPM Fee Decl., Exhibit C (GPM firm resume).

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, Defendants retained Simpson Thacher & Bartlett LLP, one of the world's premier law firms with an exemplary securities practice. Defense Counsel are talented and experienced securities practitioners who advocated forcefully for their clients. Rosen Decl. ¶49. That Lead Counsel achieved a favorable Settlement in the face of such formidable opposition weighs in favor of the requested fee.

### 4.      Plaintiffs' Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency fee risk is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Since the PSLRA was enacted, a high percentage of securities cases have been dismissed at the pleading stage. The risks do not end at the motion to dismiss stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). For example, in *Sawant v. Ramsey*, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

The risks in this case were no different. Plaintiffs' Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful

result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. Plaintiffs' Counsel risked non-payment of a total of 453.7 hours of professional time worth $371,163.50 (393.1 hours and $324,476.00, respectively, after incorporating the Court's adjustments from the Preliminary Approval Order), as well as incurring expenses of $40,957.14, for over a year and half to bring this case to a successful conclusion. Rosen Decl. ¶¶43-45; Rosen Fee Decl. ¶¶4-10 (summarizing counsel's respective lodestar and expenses in further detail); GPM Fee Decl. ¶¶4-6 (same). "This type of 'substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees.'" *Am. Apparel*, 2014 WL 10212865, at \*22; *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at \*14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

### 5.   Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund

The Ninth Circuit has established a benchmark for attorneys' fees in common fund cases of 25%, which the Court may adjust upwards or downwards for special circumstances. *Pac. Enterprises*, 47 F.3d at 379 (affirming fee of one-third of settlement fund); *Heritage Bond*, 2005 WL 1594403, at \*18 (awarding one-third of settlement amount). Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at \*23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, at \*4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the

recovery"). Here, Lead Counsel requests an award of attorneys' fees of 25% of the Settlement Amount.

Courts in the Ninth Circuit frequently award fees at or above the 25% benchmark in connection with securities class action settlements under $10 million, like the Settlement here. *E.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re IsoRay, Inc. Sec. Litig.*, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (awarding attorneys' fees of 30% of $3,537,500 settlement); *Szymborski v. Ormat Techs., Inc.*, 2012 WL 4960098, at *4 (D. Nev. Oct. 16, 2012) (awarding attorneys' fees of 30% of $3,100,000 settlement); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% fee); *Millan v. Cascade Water Servs., Inc.*, 2016 WL 3077710, at *11–12 (E.D. Cal. May 31, 2016) (approving an award of 33% of the common fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

the settlement fund); *Rausch v. Hartford Fin. Servs. Grp.*, 2007 WL 671334, at \*2 (D. Or. Feb. 26, 2007) (awarding 30% of settlement fund); *Gustafson v. Valley Ins. Co.*, 2004 WL 2260605, at \*2 (D. Or. Oct. 6, 2004) (same); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at \*3 (D. Or. Nov. 13, 2006) (same).

The requested benchmark 25% fee is also lower than contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at \*8 (C.D. Cal. Oct. 10, 2013) (Kronstadt, J.) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the unique risks avoided in achieving a prompt and substantial recovery, the contingent fee risk, and the fees awarded in similar securities class actions in this Circuit, an award at the benchmark of 25% of the Settlement Amount obtained for the Settlement Class is reasonable. *See* Preliminary Approval Order at 37 (preliminarily approving award of $750,000 in attorneys' fees). To be clear, this requested amount of $750,000 in attorneys' fees includes all fees that will be allocated to additional Plaintiffs' Counsel by Lead Counsel.

### 6.    An Informal Lodestar Crosscheck Confirms the Reasonableness of the Requested Fee Award

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 WL 10212865, at \*20; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee

award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). "In securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 WL 1594403, at *22.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n2 (D. Ariz. Apr. 20, 2012).[3] Here, an informal lodestar cross-check on the percentage of the Settlement Amount requested further supports the reasonableness of the requested fee.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Rosen Law's hourly rates for attorneys who worked on this case range from $975-1,150 for partners, $800-850 for counsel, and $450-725 for associates. Rosen Fee Decl., Exhibit A. The hourly rates for additional counsel, GPM, for attorneys and staff who worked on this case was $1,125 for partners and between $150 and $365 for

---

[3] Pursuant to the Court's Initial Standing Order for Civil Cases ("Standing Order"), Section 10(e) and Exhibit G, attached as Exhibits B-C to the Rosen Fee Decl. and Exhibits D-E of the GPM Fee Decl. are summaries, in table form, of the hours worked by and billing rate of each attorney who worked on this matter for more than 5 hours. Lead Counsel will also email the Court counsel's corresponding time entries, per Exhibit G of the Court's Standing Order.

paralegals, research analysts and admin clerks. GPM Fee Decl., Exhibit A. These rates are consistent with those of other attorneys engaged in similar litigation in this District and comparable jurisdictions. *See, e.g., Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Fleming v. Impax Lab'ys Inc.,* 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates, finding these "billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation"). Courts in this District have previously awarded attorneys' fees to Rosen Law based on substantially the same rates presented here. *E.g., In re FAT Brands, Inc. Sec. Litig.,* Case No. 2:22-cv-1820-MCS-RAO (C.D. Cal.), Dkt. Nos. 67-2 (declaration setting forth 2023 hourly rates for Rosen Law attorneys) and 71 (order awarding attorneys' fees); *Oh v. Hanmi Fin. Corp.*, Case No. 2:20-cv-2844-FLA-JCx (C.D. Cal.), Dkt. Nos. 94-4 (declaration setting forth 2024 hourly rates for Rosen Law attorneys) and 98 (order awarding attorneys' fees).

In this Action, Plaintiffs' Counsel dedicated 453.7 hours of professional time (393.1 adjusted) prosecuting this litigation from its inception. Rosen Decl. ¶43; Rosen Fee Decl. ¶7; GPM Fee Decl. ¶4. In addition to the time expended to date, Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek any further compensation. Rosen Decl. ¶48.

Plaintiffs' Counsel's total lodestar, based on their attorneys' historical and current rates, as calculated pursuant to the Court's Standing Order, is $371,163.50 ($324,476.00 adjusted). Rosen Decl. ¶43; Rosen Fee Decl. ¶7; GPM Fee Decl. ¶4. An award of 25% of the Settlement Fund, or $750,000, results in a total lodestar multiplier of 2.02 (2.31 adjusted). Rosen Decl. ¶46. This is well within the range typically awarded in this Circuit. *E.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."); *Hopkins v. Stryker Sales Corp.*, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier). The lodestar crosscheck, therefore, supports the request for 25% of the Settlement Amount in attorney's fees.

### 7.     The Settlement Class's Reaction Supports the Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21 *see also Omnivision*, 559 F. Supp. 2d at 1048. To date, 55,935 potential Settlement Class Members were notified about the Settlement by mailed copies of, or emailed links to, the Long Notice and Claim Form. Bravata Decl. ¶8. The Claims Administrator also published the Summary Notice twice on *GlobeNewswire* and once in *Investor's Business Daily*. *Id*. ¶11. The emails and Summary Notice each directed potential Settlement Class Members to where they could access the full-length Long Notice, which was also posted on a Settlement-specific website. *Id.* ¶13. The Long Notice informed Settlement Class Members that Counsel would seek attorneys' fees of up to

30% of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $55,000, and that they would seek awards to Plaintiffs of up to $6,000 total. Bravata Decl., Exhibit A (Long Notice) at 2. The Long Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so. *See id.*

The deadline for potential Settlement Class Members to submit objections and requests for exclusion is January 6, 2025. To date, no Settlement Class Member has objected to the Settlement or to the requested attorneys' fees or reimbursement of expenses. Bravata Decl. ¶15; Rosen Decl. ¶20. The lack of objections demonstrates the positive reaction of the Settlement Class, which strongly supports the fee request. *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("The lack of objection from any Class Member supports the attorneys' fees award"). No Settlement Class Member has requested exclusion from the Settlement.[4] Bravata Decl. ¶14; Rosen Decl. ¶20. The lack of any valid requests for exclusion further demonstrates the positive reaction of the Settlement Class, which supports the requested fee. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" including 16 exclusion request representing 4.86% of class supported approval of the settlement); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (reaction of class supported settlement when two large traders and small number of other class members representing under 1% of class opted-out of the settlement).

## IV.  PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *Omnivision*, 559 F. Supp. 2d at 1048

---

[4] SCS received one exclusion request from an investor who had no compensable losses and thus was not a Settlement Class Member. Bravata Decl. ¶14; Stipulation ¶1.34.

("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $55,000. Bravata Decl., Exhibit A at 2. Plaintiffs' Counsel requests reimbursement of $40,957.14 in litigation expenses incurred in prosecuting this Action. Rosen Decl. ¶58. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

Plaintiffs' Counsel pursued this litigation knowing that it could recover its expenses only if Plaintiffs and the putative Class prevailed at trial and survived on appeal or reached a settlement. Plaintiffs' Counsel had no incentive to incur, and did not incur, unnecessary expenses. All of Plaintiffs' Counsel's expenses were reasonably incurred and necessary for the prosecution of this litigation. Rosen Decl. ¶61; Rosen Fee Decl. ¶10 and Ex. D; GPM Fee Decl. ¶¶5-6 and Ex. B. The bulk of Plaintiffs' Counsel's expenses consisted of fees for a financial expert, mediator fees, investigator fees, and notice to class members. *Id*. The financial expert was needed to analyze potential damages so that Plaintiffs' Counsel could properly evaluate and negotiate the Settlement. The remainder of Plaintiffs' Counsel's expenses consisted primarily of court filing fees, *pro hac vice* fees, online legal research fees, travel expenses, and other miscellaneous expenses. *Id*. Courts, including this Court, have held that these and similar types of expenses are properly charged to the Settlement Class. *E.g., Katz*, 2013 WL 11237202, at *8; *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary). The categories of expenses for which Lead Counsel seeks reimbursement are the type routinely billed to hourly clients and, therefore, should be paid out of the common fund.

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

## V. THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS

The Court should also award Plaintiffs $3,400 total ($2,000 for KNA and $1,400 for Bergmann), as compensation for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-9 (9th Cir. 2009); *Jenson, v. First Tr. Corp.*, 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ("Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Throughout this litigation, Plaintiffs were available to Plaintiffs' Counsel as needed and performed their duties with attentiveness and diligence, including by: (1) Bergmann filing the initial complaint and KNA volunteering to file a motion seeking appointment as lead plaintiff; (2) reviewing complaints, motion papers, and other pleadings; (3) regularly communicating and corresponding with counsel regarding the litigation and settlement; (4) gathering and producing information to Plaintiffs' Counsel concerning their investments in GDS ADS; and (5) making themselves available, if needed, to testify at a deposition or trial. *See* Rosen Decl. Exhibits 5-6 (Plaintiffs' declarations). As shown in their respective declarations, Mr. Khanna (on behalf of KNA) and Mr. Bergmann were both actively involved in the case and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

warrant reimbursement for the time and effort Plaintiffs expended on the Settlement Class's behalf.

The Long Notice informed Settlement Class Members that Lead Counsel would seek an award for Plaintiffs not to exceed $6,000 total. Bravata Decl., Exhibit A at 2. To date, no objections have been raised in response to this request. Bravata Decl. ¶15; Rosen Decl. ¶20. The Court preliminarily approved awards to Plaintiffs in the range of $800-2,000 (for KNA) and $560-1,400 (Bergmann). Dkt. No. 76 at 26.

Courts in this Circuit routinely award representative plaintiffs greater amounts. *See, e.g., Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) ($10,000 each to lead plaintiffs); *Jenson,* 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) ($10,000 award to plaintiff).

Plaintiffs dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested Award to Plaintiffs is reasonable and thus, the Court should award the requested amount to Plaintiffs.

## VI.    CONCLUSION

For the foregoing reasons, the Court should award: (i) attorneys' fees of 25% of the Settlement Amount together with interest thereon; (ii) reimbursement of expenses of $40,957.14; and (iii) $2,000 for KNA and $1,400 for Bergmann.

Respectfully submitted,

Dated: December 30, 2024        **THE ROSEN LAW FIRM, P.A.**

By: */s/Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610

Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Joshua Baker (*pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jbaker@rosenlegal.com

Phillip Kim (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com

*Lead Counsel for Plaintiffs*

**THE SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Phone: (310) 301-3335
Fax: (877) 590-0483
Email: brian@schallfirm.com

*Additional Counsel for Plaintiffs*

**GLANCY PRONGAY & MURRAY LLP**
Ex Kano S. Sams II
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: esams@glancylaw.com
Email: rprongay@glancylaw.com

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

*Additional Counsel for Plaintiffs*

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)

## **CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,810 words, which complies with the word limit of L.R. 11-6.1.

Date: December 30, 2024

                                        */s/Laurence M. Rosen*
                                        Laurence M. Rosen

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES; 2:23-cv-4900-JAK (BFMx)