Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs*

[*additional counsel on signature page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY BERGMANN, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN, <br><br> Defendants. | Case No. 2:23-cv-4900-JAK (BFMx) <br><br> **DECLARATION OF LAURENCE M. ROSEN IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS** <br><br> CLASS ACTION <br><br> Date: February 10, 2025 <br> Time: 8:30 a.m. <br> Courtroom: 10C <br> Judge: Hon. John A. Kronstadt |

DECLARATION OF LAURENCE M. ROSEN; 2:23-cv-4900-JAK (BFMx)

I, Laurence M. Rosen, declare as follows:

1.      I am the Managing Partner of The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel in the above-captioned Action. I am an attorney duly licensed to practice law in California and before this Court. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

2.      I submit this declaration in support of the Motions by Lead Plaintiff KNA Family, LLC ("KNA") and named plaintiff Larry Bergmann ("Bergmann," and together with KNA, "Plaintiffs") for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and Award to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why the requests for attorneys' fees, reimbursement of expenses, and Awards to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement is $3,000,000 in cash, plus accrued interest. After attorneys' fees, reimbursement of expenses, Award to Plaintiffs, and claims administration costs, the remaining funds ("Net Settlement Fund") will be distributed to a Settlement Class consisting of all persons or entities who purchased the publicly traded American Depositary Shares ("ADS") of GDS Holdings Limited ("GDS") between July 13, 2020 and April 3, 2023, both dates inclusive.[2]

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Stipulation of Settlement, filed on June 14, 2024 ("Stipulation") (Dkt. No. 60).

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; (b) Defendants; the present and former officers and directors of GDS at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which GDS, or any person excluded under this subsection (b), has or had a majority ownership interest at any time; and (c) GDS's employee retirement plan(s) and/or benefit plan(s) including their participants and/or beneficiaries to the extent they purchased GDS ADS through any such plan(s).

2

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

4. The memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in the Final Approval Brief, as well as the memorandum in support of the motion for an award of attorneys' fees, reimbursement of litigation expenses, and awards to Plaintiffs ("Fee Brief") that cannot be supported by citation to the docket or other public documents.

## I. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

5. On June 21, 2023, Mr. Bergmann filed this Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1.

6. On August 21, 2023, KNA Family LLC ("KNA Family") and two other movants filed motions seeking appointment as lead plaintiff of the Action and approval of their respective counsel as lead counsel. Dkt. Nos. 23, 25, and 29. On October 23, 2023, the Court appointed KNA Family as Lead Plaintiff and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 41.

7. On December 18, 2023, Plaintiffs filed the operative Amended Class Action Complaint ("Complaint"). Dkt. No. 48. GDS moved to dismiss the Complaint on February 5, 2024. Dkt. No. 49. Plaintiffs filed their opposition to GDS's motion to dismiss on March 4, 2024, and GDS filed its reply in support of its motion on March 18, 2024. Dkt. Nos. 52 and 55.

8. On March 12, 2024, the Parties entered a joint stipulation informing the Court that they had agreed to participate in a private mediation and requesting that the hearing on GDS's motion to dismiss be continued pending the mediation. Dkt. No. 53. On March 13, 2024, the Court approved, in part, the joint stipulation, continuing the hearing to June 3, 2024 and ordering the Parties to file a joint status report within 14 days after completing the mediation. Dkt. No. 54.

---

Also excluded from the Settlement Class are those persons or entities who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order. Stipulation ¶1.34.

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

9.    On May 3, 2024, the Parties notified the Court that they had reached a settlement in principle, requested that the hearing on GDS's motion to dismiss be vacated and the motion withdrawn without prejudice, and proposed that Plaintiffs would move for preliminary approval of the proposed Settlement on or by June 17, 2024. Dkt. No. 56.

10.    On June 17, 2024, Plaintiffs filed the Stipulation and moved for preliminary approval of the Settlement. Dkt. Nos. 60 and 61. On August 26, 2024, the Court held a hearing on Plaintiffs' motion for preliminary approval and requested additional briefing and evidence submissions, Dkt. No. 72, which Plaintiffs provided. Dkt. No. 73.

11.    On October 7, 2024, the Court entered the Order RE: Motion for Preliminary Approval of Class Action Settlement, Dkt. No. 74, as amended two days later. Dkt. No. 76 ("Preliminary Approval Order").

12.    Pursuant to the Preliminary Approval Order, on October 8, 2024, Lead Counsel filed the Supplemental Agreement under seal for the Court's review.

## II.    OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

13.    As the Parties briefed GDS's motion to dismiss, they began in parallel to discuss the prospect of resolving the Action through a private mediation. They engaged Jed Melnick, Esq. of JAMS, a well-respected mediator with experience mediating complex securities class actions such as this Action. Prior to the mediation, the Parties exchanged detailed mediation statements.

14.    The Parties attended a mediation with Mr. Melnick on April 19, 2024. The Parties were unable to reach a resolution at the mediation but continued their negotiations through Mr. Melnick over the subsequent two weeks. After continued discussions, the Parties each accepted a mediator's proposal from Mr. Melnick to settle the Action in principle for the Settlement Amount.

15.    In the opinion of the team of lawyers at my firm who worked on this case, the Settlement is a fair, reasonable, and adequate result for the Settlement Class. The

Settlement confers a substantial benefit on the Settlement Class, eliminating the risk of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, I submit that the Plan of Allocation is a fair and reasonable method for distributing the proceeds of the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

16.   As set forth herein and in the Final Approval Brief, the Settlement represents approximately 6.1% of the maximum estimated damages of $48.9 million under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. This maximum estimated amount could only be recovered if: all the claims alleged survive to trial; a class is certified; a jury adopts Plaintiffs' expert's damages model; Plaintiffs defeat any appeals; Defendants have the ability to pay such a judgment; and Plaintiffs are able to collect or enforce such a judgment.

17.   A lump sum $3 million settlement in the face of these challenges is a favorable outcome for the Settlement Class. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

18.   For litigating this case on a contingency basis and negotiating this settlement, Lead Counsel requests a fee of 25% of the Settlement Amount, or $750,000, and reimbursement of the reasonable litigation expenses incurred in connection with prosecuting this Action. This fee request is within the range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

19.   The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

Notice,[3] objections to the Settlement must be received by January 6, 2025. To date, there have been no objections to the Settlement. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of The Postcard Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Bravata Declaration" or "Bravata Decl.") ¶15. A true and correct copy of the Bravata Declaration is attached hereto as **Exhibit 1**. If Rosen Law or the Claims Administrator, Strategic Claims Services ("SCS"), receives any objections, Plaintiffs will address them in their reply papers in support of final approval.

20. Pursuant to the Notice, requests for exclusion from the Settlement must be received by January 6, 2025. To date the Claims Administrator has received no valid requests for exclusion from Settlement Class Members. Bravata Decl. ¶14. SCS received one exclusion request from an investor who had no compensable losses and thus was not a Settlement Class Member. Bravata Decl. ¶14; Stipulation ¶1.34.

21. Mr. Melnick has signed a declaration outlining the settlement negotiations conducted with his assistance and supporting the Settlement. A true and correct copy of the Declaration of Jed Melnick, Esq. is attached hereto as **Exhibit 2**.

## III. NOTICE PROCEDURES

22. At Lead Counsel's direction, and pursuant to the Preliminary Approval Order, the Claims Administrator published the Summary Notice twice electronically on *GlobeNewswire*—on November 4, 2024 and November 11, 2024—and once in print in *Investor's Business Daily* on November 11, 2024. Bravata Decl. ¶11. The Claims Administrator also posted the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website on October 15, 2024. *Id.* ¶13.

---

[3] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

23. To date, 55,935 potential Settlement Class Members were notified of the Settlement either by mailed Notice and Proof of Claim or emailed link to the Settlement website with the Long Notice and Claim Form. *Id.* ¶8. SCS mailed a total of 26,093 copies of the Notice and Proof of Claim to potential Settlement Class Members. SCS emailed links to 13,256 potential Settlement Class Members. *Id*. ¶7. Additionally, a nominee notified SCS that it emailed 16,316 of its clients links to the Long Notice and Claim Form. ¶7.

## IV. PLAN OF ALLOCATION

24. Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation. Bravata Decl., Ex. A (Long Notice) at 4-7. Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages report Plaintiffs used to estimate their maximum recoverable damages, as filed with the Court (Dkt. No. 73-2) and it closely tracks Plaintiffs' theory of the case.

25. If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

26. The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class

7

Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## IV.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

27.    The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Lead Counsel had thoroughly investigated the claims and consulted with a damages expert. The investigation consisted of an independent review of public documents and statements regarding and from GDS and retention of an investigator who interviewed former GDS employees and third parties.

28.    Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case surviving on the pleadings, at summary judgment, at the class certification stage, and at trial. Particularly in this case, the fact that Defendants and the sources of proof were located in China, and issues related to collectability of any settlement or judgment from Chinese Defendants, factored into the decision to enter the Settlement. Plaintiffs and Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

29.    Although Lead Counsel believes Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat GDS's pending motion to dismiss, which asserted challenges to the sufficiency of Plaintiffs' Complaint including the elements of falsity, materiality, and scienter.

30.    Plaintiffs faced the risk that the Court may have found that Defendants' statements were not actionably false or misleading. The Court may also have found that the prior disclosure of Defendant Huang's transactions rendered the challenged statements immaterial as a matter of law. Plaintiffs also faced the risk that the Court would find they had not adequately pleaded particularized facts supporting a strong inference of scienter with respect to the individual Defendants, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

8

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

31.     Plaintiffs also faced the challenge of obtaining class certification and establishing market efficiency for the GDS ADS. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing GDS ADS as it would be uneconomical for the vast majority of Settlement Class Members to bring individual cases.

32.     Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity. Plaintiffs calculated that damages were $48.9 million, assuming they prevailed on all of their claims. Based on Lead Counsel's experience, retaining an expert to opine and testify as to loss causation and damages would cost at least several hundred thousand dollars. Defendants would likely present their own expert testimony to demonstrate that the revelation of the fraud did not cause the alleged stock drop, and/or attempt to demonstrate that all or a portion of the alleged two-day stock drop was attributable to other issues unrelated to the alleged fraud.

33.     Discovery would also be costly, complex, and time consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, GDS employees, and key third parties. Further, since the Class Period began in 2020 and depositions would not start until at least well into 2025 or later, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

34.     Moreover, given that GDS is based in China, an additional risk permeated through the litigation. First, discovery, which is already complex, timely, and costly,

9

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

would pose additional obstacles. China does not permit depositions on the mainland or virtual depositions which would require the cooperation of GDS and witnesses to travel out of China for depositions. Additionally, for any documents to be produced to Plaintiffs, GDS's counsel would have to review the documents, send them to the appropriate authorities in the Chinese government, and wait for permission to approve their release. Lead Counsel has been, and is currently, involved in litigation with Chinese-based defendants in which discovery has been significantly stalled by this process. Additionally, any documents that were eventually produced will likely be in Chinese which would require translation or the retention of bilingual attorneys to facilitate document review.

35. Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, it may be a pyrrhic victory. Enforcing a U.S. judgment in China is nearly impossible as the U.S. Department of State has noted that "[t]here is no bilateral treaty or multilateral convention in force between the United States and any other country on reciprocal recognition and enforcement of judgments."[4] Moreover, China regularly denies recognition and enforcement of foreign judgments, including from the United States, based on reciprocity or public policy. Shun-Hsiang Chen, *Signed, Sealed, & Undelivered: Unsuccessful Attempts of Foreign Judgment Recognition Between the U.S. and China*, 16 Brook. J. Corp. Fin. & Com. L. 167 (2022). As China does not have an agreement with the United States, enforcement of United States judgments would fall within the parameters of reciprocity. However, "China's reciprocity system is considered one of the most restrictive in the world and regularly utilized to deny foreign judgment recognition and enforcement." *Id.* at 184. As of June 2022, Chinese courts had only recognized and enforced two judgments from the United States, *id.*, neither of which were judgments from securities lawsuits.

---

[4] https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Enforcement-of-Judges.html

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

36.   Further, although GDS retained counsel based in the United States, the risk remains that GDS could disengage with its counsel and this litigation. Lead Counsel experienced this first-hand in *Vanderhoef v. China Auto Logistics, Inc.*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), involving China Auto Logistics, Inc. ("CALI"), a Nevada corporation with headquarters in China and China-based individual defendants. Originally, the Chinese defendants retained U.S.-based counsel, who filed and briefed motions to dismiss. The court denied the defendants' motions to dismiss, but shortly thereafter the Chinese defendants' respective counsel withdrew from the action as the defendants had stopped engaging meaningfully with their counsel and failed to pay their attorneys. In the end, the plaintiffs were forced to voluntarily dismiss their claims against CALI and the China-based individual defendants without prejudice as they did not retain new counsel and ultimately vanished. *See Vanderhoef*, No. 2:18-cv-10174-CCC-ESK (D.N.J.), Dkt. No. 140 (letter from plaintiffs outlining history of events and grounds for dismissal).

37.   Similarly, in *In re ChinaCast Educ. Corp. Sec. Litig.*, 2:12-cv-04621-JFW-PLA (C.D. Cal.), for about six years plaintiffs diligently pursued a securities class action against ChinaCast Education Corporation, a Delaware company operating in China. The effort included a successful appeal at the Ninth Circuit which reversed the district court's dismissal decision. ChinaCast's insurers refused to cover litigation costs, however, and the company's counsel withdrew from the action leaving ChinaCast unrepresented. The plaintiffs later secured a default judgment of $65.8 million for the class, but the very next day, ChinaCast filed for bankruptcy. In an attempt to recover the default judgment, plaintiffs spent an additional two years pursuing a lawsuit against ChinaCast's multiple insurers. *Jayhawk Private Equity Fund II LP v. Liberty Insurance Underwriters*, 2:17-cv-05523-GW-RAO (C.D. Cal.). Unfortunately, plaintiffs' claims were dismissed due to the expansive exclusion provisions in the insurance policies. Therefore, despite more than seven years of

11

dedicated efforts by the plaintiffs' counsel, there was no financial recovery for the investors from the China-based defendant.

## V.    THE FEE APPLICATION IS FAIR AND REASONABLE

38.    The Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, plus interest, and for reimbursement of counsel's litigation expenses in an amount not to exceed $55,000. Bravata Decl., Exs. A and C. In light of the Court's guidance in the Preliminary Approval Order (finding, based on the limited evidence presented at the preliminary approval stage, that "an upward departure from the 25% benchmark award...is not justified"), Dkt. No. 76 at 36-37, Lead Counsel is requesting only 25% of the Settlement Amount, or $750,000, plus interest, as attorneys' fees. This request includes all fees that will be allocated to Additional Plaintiffs' Counsel, Glancy Prongay & Murray LLP ("GPM"), by Lead Counsel pursuant to the firms' agreement. As set forth in the Fee Brief, Lead Counsel's application for 25% of the common fund that counsel's efforts created falls in line with similar awards that courts in this circuit have granted and is merited here.

39.    Plaintiffs' Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Plaintiffs' Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

### *Plaintiffs' Counsel's Work and Expertise*

40.    Plaintiffs' Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation.

41.    During the PSLRA-mandated discovery stay, Lead Counsel reviewed GDS's public filings and statements during the alleged Settlement Class Period, as well as other news reports and public information relating to GDS. Lead Counsel also

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

retained an investigator to interview former GDS employees and third parties. Through their investigation, Plaintiffs' Counsel determined the scope and strength of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Ultimately, Plaintiffs' Counsel ably synthesized these facts into a compelling presentation during settlement negotiations at and after the mediation.

42. Plaintiffs' Counsel also opposed GDS's motion to dismiss the Complaint, thoroughly researching GDS's arguments and assessing the strengths of those arguments and Plaintiffs' responses. Plaintiffs' Counsel also reviewed Defendants' mediation statement and researched additional issues raised therein with regards to Plaintiffs' claims. As a result of these efforts, Plaintiffs and Plaintiffs' Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

43. The total amount of time expended by attorneys and professional staff employed by Plaintiffs' Counsel is 453.7 hours (393.1 after incorporating the Court's adjustments from the Preliminary Approval Order) with a combined lodestar of $371,163.50 ($324,476.00 adjusted). This number is derived from the time records Lead Counsel, Rosen Law, and additional counsel, GPM, regularly maintained. A listing of the professionals at Rosen Law who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Declaration") ¶4. A true and correct copy of the Rosen Fee Declaration is attached hereto as **Exhibit 3**. Attorneys at Rosen Law expended 390.4 hours (329.8 adjusted) on the litigation. The total value of the services performed in this case by Rosen Law, based upon our historical and current rates, is $316,045.00 ($269,357.50 adjusted). *Id*.

44. A listing of the professionals at GPM who worked on this matter, the number of hours spent by each such professional, and their hourly rates is set forth in detail in the Declaration of Ex Kano Sams on Behalf of Glancy Prongay & Murray

13

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

LLP Concerning Attorneys' Fees and Expenses ("GPM Fee Declaration") ¶4. A true and correct copy of the GPM Fee Declaration is attached hereto as **Exhibit 4**. Professionals at GPM expended 63.30 hours on the litigation. The total value of the services performed in this case by GPM, based upon its historical and current rates, is $55,118.50. *Id*.

45.    Attached as Exhibits B and C to the Rosen Fee Declaration, as well as Exhibits D and E to the GPM Fee Declaration, are two charts for each firm summarizing the work Plaintiffs' Counsel performed in the Action, in the format requested in the Court's Initial Standing Order for Civil Cases ("Standing Order") ¶ 10(e) and Exhibit G of the Standing Order. Specifically, Exhibit B to the Rosen Fee Declaration and Exhibit D to the GPM Fee Declaration are charts setting forth each of the major tasks undertaken by Plaintiffs' Counsel in the Action, and a breakdown, for each task, of the hours spent by each attorney or other professional who worked on that task, their hourly rates in effect when the work was performed, and their historic-rate lodestar for work on that task, with subtotals for each task. Exhibit C to the Rosen Fee Declaration and Exhibit E to the GPM Fee Declaration sets forth a list of all attorneys and other paraprofessionals who worked on this Action, with their rates, total hours, and lodestar, and a breakdown of how much time they devoted to each of the major litigation tasks. Plaintiffs' Counsel will also provide these charts to the Court in Excel format pursuant to the Court's Standing Order.

46.    The requested award of attorneys' fees of $750,000 would represent a lodestar multiplier of approximately 2.02 (2.31 adjusted). This multiplier—adjusted or not—is well within the range of multipliers that courts in this Circuit have typically awarded in securities class actions.

47.    As reflected in the firms' resumes, Plaintiffs' Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases. Rosen Law's Firm

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

Resume is attached to the Rosen Fee Declaration as Exhibit E. GPM's Resume is attached to the GPM Fee Declaration as Exhibit C.

48.     Moreover, in addition to the time expended to date, Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.

***The Caliber of Opposing Counsel***

49.     GDS is represented by Simpson Thacher & Bartlett LLP, a highly respected defense firm with substantial securities litigation experience and resources who vigorously represented their clients throughout the Action. In the face of this opposition, Plaintiffs and Plaintiffs' Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

50.     Plaintiffs' Counsel undertook this class action on a contingency fee basis. I summarize above and Plaintiffs further describes in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

51.     Those risks are also relevant to an award of attorneys' fees. I describe in detail herein and Plaintiffs further describes in the Fee Brief the risks Plaintiffs' Counsel assumed and the time and expenses they incurred without any payment.

52.     From the outset, Plaintiffs' Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Plaintiffs' Counsel has received no compensation during the course of this litigation, pending since June 2023.

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

53. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels.

54. As a result of persistent efforts in the face of substantial risks and uncertainties, Plaintiffs' Counsel achieved a fair, adequate, and reasonable recovery for the Settlement Class. In consideration of Plaintiffs' Counsels' efforts and the favorable result achieved, I believe that a 25% fee is reasonable and that the Court should approve this request.

*The Reaction of the Class to the Requested Fee*

55. As noted above, 55,935 potential Settlement Class Members received notice of the Settlement. Bravata Decl. ¶8.

56. The deadline for objections is January 6, 2025. To date, neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Bravata Decl. ¶15.

57. The deadline to request exclusion from the Settlement is January 6, 2025. As discussed above, SCS received no valid requests for exclusion from any Settlement Class Members. *Id*. ¶14. SCS received one exclusion request from an investor who had no compensable losses and thus was not a Settlement Class Member. Bravata Decl. ¶14; Stipulation ¶1.34.

**VI.   REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE**

58. Plaintiffs' Counsel have incurred $40,957.14 in litigation expenses in connection with the prosecution of the Action. Of this, $40,464.11 was incurred by Lead Counsel (Rosen Fee Decl. ¶10 and Exhibit D) and $493.03 was incurred by GPM. (GPM Fee Decl. ¶¶5-6 and Exhibit B). These expenses were reasonable and necessary for the prosecution of the Action.

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

59. From the outset, Plaintiffs' Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Plaintiffs' Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Plaintiffs' Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

60. A listing of the expenses Rosen Law incurred, compiled from the firm's regularly maintained records, are set forth in the Rosen Fee Declaration, Exhibit D. The expenses incurred pertaining to this case are reflected in Rosen Law's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. A listing of the expenses GPM incurred, compiled from the firm's regularly maintained records, are set forth in the GPM Fee Declaration, Exhibit B. The expenses incurred pertaining to this case are reflected in GPM's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

61. Litigation expenses for which Plaintiffs' Counsel seeks reimbursement included expert consultant fees, travel expenses, legal research fees, document retrieval fees, mediation fees, and filing fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case. The financial expert performed a damages analysis so that Plaintiffs' Counsel could properly evaluate and negotiate the Settlement.

62. In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

17

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO

## VII.   MODEST AWARDS TO PLAINTIFFS ARE WARRANTED

63.    Plaintiffs seek awards of $2,000 for KNA and $1,400 for Bergmann for their time and effort overseeing this action pursuant to the PSLRA. The Declarations of Bhushan Khanna (on behalf of KNA) and Larry Bergmann, attached hereto as **Exhibits 5 and 6**, respectively, detail the work Plaintiffs completed on behalf of the Settlement Class including filing the initial complaint, filing a lead plaintiff motion, reviewing the amended complaint and motion to dismiss briefing, evaluating and approving the Settlement, communicating regularly with counsel, and discussing the Settlement documents with counsel. Plaintiffs have been actively involved in this litigation and put the concerns of the Settlement Class at the forefront.

64.    As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not made worse off for their service to the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 30, 2024.

/s/*Laurence M. Rosen*

DECLARATION OF LAURENCE M. ROSEN; 2:22-cv-01820-MCS-RAO